**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **SAMMY STEPHEN OGG,** ) | |
| ) | |
| **PLAINTIFF,** ) | **No.  3:14-cv-00871** |
| ) | **Judge Trauger/Brown** |
| **v.** ) | |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **COMMISSIONER OF THE SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **DEFENDANT.** ) | |

**To:  The Honorable Judge Aleta A. Trauger, United States District Judge**

### REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Plaintiff's

Motion (Docket Entry 14) be **DENIED**, and that the Commissioner's decision be **AFFIRMED**.

### I.        Procedural History

Plaintiff protectively filed for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI) on September 20, 2010.[1] (Docket Entry 8, pp. 162-74).[2]  He claimed an

onset date of December 31, 2009 and disability due to back problems and a pinched nerve in his

left arm. (Docket Entry 8, pp. 191; 195). The Commissioner denied his claims on initial review

and reconsideration. (Docket Entry 8, pp. 101; 112-15). Plaintiff requested a hearing before an

Administrative Law Judge (ALJ) after the 60 day deadline to do so and explained that the delay

was due to his recovering from surgery. (Docket Entry 8, p. 116).  On October 02, 2012, Plaintiff

---

1 The Magistrate Judge notes that the ALJ considered a protective filing date of August 30, 2010 and the record reflects this filing date. (Docket Entry 8, pp. 29; 191). However, Plaintiff asserts that the protective filing date was September 20, 2010. (Docket Entry 11, p. 1). This difference is not relevant to Plaintiff's Motion.

2 Page numbers referring to the record herein reflect the Bates Stamp.

appeared before ALJ, Michelle Thompson. (Docket Entry 8, p. 34). Also appearing were William Underhill (Mr. Underhill), Plaintiff's attorney and Tyra Watts (Ms. Watts), the vocational expert (VE). (Docket Entry 8, p. 34). On October 26, 2012, the ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act (the Act). (Docket Entry 8, p. 29). On January 30, 2014, the Appeals Council denied Plaintiff's request for review. (Docket Entry 8, p. 1).

On March 28, 2014, Plaintiff timely brought the instant action. (Docket Entry 1). Defendant has filed its Answer and the Administrative Record (the record). (Docket Entry 7 and 8). On July 07, 2014, Plaintiff filed a Brief in Support of a Motion for Judgment on the Administrative Record without an accompanying Motion. (Docket Entry 11). Nonetheless, Defendant filed a Response in Opposition. (Docket Entry 12). Plaintiff was given 14 days to file an appropriate Motion and timely did so.  (Docket Entry 13 and 14). Therefore, the matter is properly before the Court.

## II.        Review of the Record

### A.        Relevant Medical Evidence

Relevant medical evidence includes evidence from "at least the 12 months preceding the month in which [the plaintiff] file[s] [his] application unless there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff] say[s] that [his] disability began less than 12 months before [he] filed . . . ." *See* 20 C.F.R. §§ 404.1512(d)(2) and 416.912(d)(2). Here, Plaintiff's alleged onset date was December 31, 2009, less than one year before he filed. (Docket Entry 8, p. 191). However, since the ALJ reviewed Plaintiff's remote history from before the alleged onset date, the Magistrate Judge includes that history.

Treatment notes indicate that Plaintiff had back surgery at the lumbar levels of L4-L5 at some time between 2001 and 2004, although the record reflects different dates. (Docket Entry 8, pp. 245; 267; 270; 300; 369; 376; 404). Between 2004 and 2006, Plaintiff presented to various providers with complaints of degenerative disc disease, back pain that radiated into his legs, left elbow pain, and problems sleeping. (Docket Entry 8, pp. 242-67). He was prescribed physical therapy and pain medication. (Docket Entry 8, pp. 246; 337-56).

Between 2002 and 2011, Plaintiff presented to Northcrest Medical Center Emergency Room (Northcrest ER). On March 12, 2002, Plaintiff presented after falling off of a ladder. (Docket Entry 8, pp. 410-15). On January 21, 2004, Plaintiff presented with lower back pain radiating down his right leg. (Docket Entry 8, p. 404). On March 12 and 26, 2005, Plaintiff presented with back pain. (Docket Entry 8, p. 376). He reported pain when bending and that his work required him to "bend over a lot . . . ." (Docket Entry 8, p. 376; 381). On May 27, 2006, Plaintiff presented again with back pain radiating down his right leg. (Docket Entry 8, p. 371). On June 22, 2008 Plaintiff was treated for depression and anxiety. (Docket Entry 8, pp. 365-66). On December 03, 2008, Plaintiff was treated for a right ankle injury. (Docket Entry 8, p. 292). On August 12, 2009, he was treated for an apparent allergic reaction to morphine. (Docket Entry 8, p. 285). On May 31, 2010, Plaintiff was treated for a dog bite and reported no back pain or other problems. (Docket Entry 8, pp. 275; 278-80). On July 29, 2010, Plaintiff presented with lower back pain. (Docket Entry 8, p. 269). He reported that his "pain resolved" after his back surgery in 2004 but that he began experiencing back pain while working in a tobacco field on the previous day. (Docket Entry 8, p. 270). He was treated with pain medication and discharged. (Docket Entry 8, p. 273).

Plaintiff then presented to the Robertson County Health Department for follow up care on August 02, 2010. (Docket Entry 8, p. 300). He reported that he "was bending over working on farm equipment when [he] got [a] stabbing pain." (Docket Entry 8, p. 300). He reported numbness and "shooting pain" radiating into his legs. (Docket Entry 8, p. 300). He continued to seek follow up care in September and December 2010 as well as February 2011 and reported persistent pain in his neck, back, and right shoulder. (Docket Entry 8, pp. 297-99; 518-19).

On April 13, 2011, Plaintiff presented to Northcrest ER with leg pain and an injury to his right knee. (Docket Entry 8, p. 327). He was admitted and treated by Dr. Mark Cutright (Dr. Cutright) for a fracture. (Docket Entry 8, pp. 327). Plaintiff continued to follow up with Dr. Cutright in May, July, and October 2011. (Docket Entry 8, p. 334; 419-34). On May 01, 2011, Plaintiff returned to Northcrest ER and reported continuing right leg pain. (Docket Entry 8, pp. 445-46).On July 19, 2011, Plaintiff reported that he was "unable to work." (Docket Entry 8, p. 424). On October 18, 2011, during a visit to Dr. Cutright, Plaintiff reported that he had returned to work "full duty" and was experiencing "complications with pain and swelling in his knee." (Docket Entry 8, p. 421).

Plaintiff returned to the Robertson County Health Department in March and October 2011 as well as January, March, and April 2012 for pain in his left hip, shoulders, back, and right leg. (Docket Entry 8, p. 507; 509; 511; 513). On April 13, 2012, the provider documented decreased range of motion in Plaintiff's right leg and hip. (Docket Entry 8, p. 508).

**B.      Consultative Examiner Assessments on behalf of Disability Determination Services**

On December 17, 2010, Dr. Marvin Cohn (Dr. Cohn) completed a physical Residual Functional Capacity (RFC) assessment. (Docket Entry 8, p. 303). He found that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, stand, sit or

walk for six hours in an eight hour day, and push or pull for an unlimited period. (Docket Entry 8, p. 304). He found no postural, manipulative, visual, communicative, or environmental limitations. (Docket Entry 8, pp. 305-08). He noted that Plaintiff "is only partially credible as his pain complaints and reported limitations exceed the medical evidence which shows minimal and conservative [treatment]. However, . . . [Plaintiff] is given the benefit of the doubt and the RFC is reduced due to his complaints of pain." (Docket Entry 8, p. 310). Dr. Carolyn Parrish (Dr. Parrish) affirmed these findings on March 26, 2011. (Docket Entry 8, p. 312).

### C.    Medical Source Statements

Dr. Cutright completed a Medical Source Statement on July 29, 2011. (Docket Entry 8, p. 498). He found that Plaintiff could frequently lift or carry up to twenty pounds, but never more. (Docket Entry 8, p. 498). He found that Plaintiff could sit for one hour, stand for twenty minutes, or walk for ten minutes at any one time without interruption. (Docket Entry 8, p. 499). He found that Plaintiff could sit for six hours, stand for stand for one hour or walk for one hour total in an eight hour day. (Docket Entry 8, p. 499). He also found that Plaintiff could frequently reach, push or pull, could continuously handle, finger, or feel with both hands, and could frequently use both of his feet. (Docket Entry 8, p. 500). He found that Plaintiff could occasionally climb stairs or ramps, balance, stoop, or kneel but could never climb ladders or scaffolds, crouch, or crawl. (Docket Entry 8, p. 501). He found no hearing or vision impairments. (Docket Entry 8, p. 502). He found that Plaintiff could never work at unprotected heights, could occasionally move mechanical parts or be exposed to extreme heat, cold, and vibrations, and could frequently operate a vehicle or be exposed to humidity, wetness, dust, odors, fumes, and pulmonary irritants. (Docket Entry 8, p. 502). He found that Plaintiff would not be able to walk on rough or uneven surfaces. (Docket Entry 8, p. 503). Finally, in response to the question, "[h]ave the

limitations you found above lasted or will they last for twelve consecutive months," Dr. Cutright responded, "No." (Docket Entry 8, p. 503).

Mary Todd Linville, APRN (Ms. Linville) of the Robertson County Health Department completed a Medical Source Statement on April 13, 2012. (Docket Entry 8, p. 530). Dr. L.A. MacDonald (Dr. MacDonald) signed the Medical Source Statement below the signature of Ms. Linville. (Docket Entry 8, p. 537). Ms. Linville found that Plaintiff could occasionally lift or carry up to twenty pounds, but never more. (Docket Entry 8, p. 531). She found that Plaintiff could sit for ninety minutes, stand for ten minutes, or walk for one hour at any one time without interruption. (Docket Entry 8, p. 533). She found that Plaintiff could sit for four hours, stand for thirty minutes or walk for three hours total in an eight hour day, and found that Plaintiff required a cane to walk. (Docket Entry 8, p. 533). She found that Plaintiff could occasionally reach or handle with the right hand, could continuously feel, push or pull with the right hand, could occasionally reach overhead with the left hand, and could never handle, finger, feel, push or pull with the left hand. (Docket Entry 8, p. 500). She found that Plaintiff does not drive and could never use his left foot. (Docket Entry 8, p. 534). She found that Plaintiff could occasionally climb stairs or ramps, stoop, or crouch but could never climb ladders or scaffolds, balance, kneel, or crawl. (Docket Entry 8, p. 535). She wrote that Plaintiff "needs glasses" although she noted that she did not evaluate hearing or vision. (Docket Entry 8, p. 535). She found that Plaintiff could never work at unprotected heights, move mechanical parts, operate a vehicle or be exposed to vibrations, but could occasionally be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat or cold and at least moderate office noise. (Docket Entry 8, p. 536). She found that Plaintiff would not be able to shop, travel alone, walk for more than a short distance, or read. (Docket Entry 8, p. 537). Finally, in response to the question, "[h]ave the

limitations you found above lasted or will they last for twelve consecutive months," she responded, "Yes." (Docket Entry 8, p. 537).

### D.      Testimonial Evidence

### 1.      Plaintiff and Witness Testimony

On October 02, 2012, Mr. Underhill presented an opening statement to the ALJ on behalf of Plaintiff. (Docket Entry 8, p. 38). He stated that Plaintiff had left school before completing the eighth grade, did not have a GED, and had a work history consisting of line assembly and farm work. (Docket Entry 8, p. 38). He described Plaintiff's problems and medical history, including: degenerative disc disease, back surgery, pain that radiates into his left leg, a right leg fracture that continues to cause difficulty, and a fracture in his left forearm at a young age that required "the insertion of several pieces of hardware." (Docket Entry 8, p. 39). He stated that Plaintiff requires a cane to walk, that he has little grip strength in his left hand, that he has situational depression, and that he has high blood pressure. (Docket Entry 8, p. 39).

Plaintiff was questioned by Mr. Underhill. (Docket Entry 8, p. 40). He testified that he worked on an assembly line and a tobacco farm previously. (Docket Entry 8, p. 41). He testified that he had been in "special resources" classes since the fourth grade because of "some testing . . . at the school" and "a hearing impairment." (Docket Entry 8, p. 42). He testified that he left school in the eighth grade and that he is unable to read. (Docket Entry 8, p. 42). He testified that he needs a hearing aid but has been unable to afford one. (Docket Entry 8, p. 43). He testified that he is able to add and subtract "[j]ust very little," that he cannot balance a checkbook, and that he cannot multiply or divide. (Docket Entry 8, p. 43). He testified that since his alleged onset date of December 31, 2009, he has worked "[j]ust very little" but not a full day in a tobacco field. (Docket Entry 8, p. 44). He testified that he had been to the emergency room several times for

severe back pain and that he had been unable to operate a tractor for more than forty-five minutes because of pain in his legs. (Docket Entry 8, p. 46). He testified that he takes Motrin, muscle relaxers, antibiotics, and blood pressure medicine, and that the muscle relaxers make him drowsy while the blood pressure medicine causes him to "see little blue spots" and become dizzy. (Docket Entry 8, pp. 46; 50).

Plaintiff further testified that he had back surgery in 2001 but that his symptoms have worsened. (Docket Entry 8, p. 47). When asked to describe his symptoms, he testified that he has a stabbing pain in his lower back that shoots down his leg and can last for up to forty minutes. (Docket Entry 8, p. 47). He went on to state that the only thing he can do is take his medicine to relieve the pain. (Docket Entry 8, p. 47). He testified that he has problems in his right knee and right leg as a result of a fracture and a dog bite. (Docket Entry 8, pp. 48-49). Plaintiff testified that as a result of breaking his arm in the third grade, he has pain and difficulty with grip strength in his left hand. (Docket Entry 8, pp. 49-50). He testified that he is not able to use his left hand or arm to do anything. (Docket Entry 8, p. 50). He testified that he uses a cane and a knee brace. (Docket Entry 8, p. 50). He testified that he has difficulty seeing and that he needs to wear glasses but does not have any. (Docket Entry 8, p. 51). He testified that he can sit for about an hour, stand for about thirty minutes, and walk for about ten minutes. (Docket Entry 8, pp. 51-53).

Plaintiff testified that he lives with his parents, brother, and son and that he has difficulty sleeping at night. (Docket Entry 8, p. 53). He testified that during the day he sits on the porch or watches television. (Docket Entry 8, p. 54). He testified that his mother washes his clothes, cooks, and cleans and that he may take the trash out or sweep the floor. (Docket Entry 8, p. 55). He testified that he does not drive because he has difficulty sitting for long periods of time and that he uses home remedies such as Bengay or hot water. (Docket Entry 8, p. 56).

Plaintiff was also questioned by the ALJ. He testified that he has a valid driver's license. (Docket Entry 8, p. 57). The ALJ asked Plaintiff to clarify when he last worked because the record contains a medical note from July 29, 2010 indicating that Plaintiff became injured while working on farm equipment. (Docket Entry 8, pp. 57-58). Plaintiff testified that he worked during the summer and fall of 2010 on a farm, but that he did not work on a farm in 2011. (Docket Entry 8, p. 58). He testified that he stopped working because "[it is] hard manual labor." (Docket Entry 8, p. 58). The ALJ asked Plaintiff about his medical treatment and Plaintiff testified that he goes to Robertson County Health Department when he needs to and that a provider had prescribed him a cane. (Docket Entry 8, p. 59). Plaintiff also reiterated that his medication causes drowsiness and that he "[cannot] hear that good." (Docket Entry 8, p. 60).

## 2.    Vocational Expert Testimony

The VE testified that Plaintiff previously worked as an assembler, which is unskilled[3] work with an SVP of 2, requiring a light level of strength[4] and also as a farm laborer, which is unskilled work with an SVP of 2, requiring a heavy level of strength. (Docket Entry 8, p. 61).

The ALJ then presented the VE with a hypothetical scenario, assuming someone of the same age, education, and work experience as Plaintiff "where such person can [frequently] lift, push, pull, or carry twenty-five pounds, occasionally up to fifty, sit, stand, and/or walk six hours in an eight-hour workday." (Docket Entry 8, pp. 62; 304). The VE testified that Plaintiff's past work as an assembler would still be available given these limitations and that other work would

---

3 Social Security Ruling 00-4P, 2000 WL 1898704, at *3 ("The Dictionary of Occupational Titles (DOT) lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

4 20 C.F.R. §§ 404.1567 and 416.967 ("To determine the physical exertion requirements of work in the national economy, [jobs are classified] as sedentary, light, medium, heavy, and very heavy.").

also be available. (Docket Entry 8, p. 62). The ALJ did not request specific examples of such

other work. (Docket Entry 8, p. 61). The ALJ then presented the VE with a second hypothetical:

> Where the same person can occasionally lift up to twenty pounds, can sit ninety minutes at a time, stand ten minutes at a time, walk one hour at a time. [T]otal in an eight-hour workday, [Plaintiff] could sit for four and a half hours . . . [could stand for] thirty minutes . . . and can walk for three hours total. Such person is restricted in reaching and handling in the right hand, can never perform fingering in the right hand, can only occasionally perform reaching in the left hand, never [perform] handling, fingering, feeling, pushing or pulling in the left hand.

(Docket Entry 8, p. 63). The VE testified that under this hypothetical, Plaintiff would not be able

to perform any work. (Docket Entry 8, p. 63). The ALJ then presented the VE with a third

hypothetical: "[where] the same person at the light level . . . [can] lift, push, pull, and carry ten

pounds occasionally, up to twenty pounds, sit, stand, and/or walk six hours in an eight-hour

workday." (Docket Entry 8, p. 63). The VE testified that Plaintiff's past work as an assembler

would still be available given these limitations. (Docket Entry 8, p. 63). The ALJ did not request

specific examples of such other work. (Docket Entry 8, p. 63).

### III.    Analysis

### A.    Standard of Review

The issue before the Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), is limited to

whether there is substantial evidence in the record to support the ALJ's findings of fact and

whether the ALJ applied the correct legal standards. *Carrelli v. Comm'r of Soc. Sec.*, 390 F.

App'x 429, 434 (6th Cir. 2010) (unpublished opinion) (quoting *Cutlip v. Sec'y of Health &

Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994)). "Substantial evidence" is "more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Carrelli*, 390 F. App'x at 434 (quoting *Cutlip,*

25 F.3d at 286). The Court "may not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility." *Carrelli*, 390 F. App'x at 434 (citation omitted).  If there is "substantial evidence" in the record that supports the ALJ's decision and the ALJ applied the correct legal standard, then the Court must affirm the final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [plaintiff's] position." *Carrelli*, 390 F. App'x at 434 (citation omitted).

## B.    Administrative Proceedings

Disability is defined for Title II DIB and Title XVI SSI claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1505 and 416.905. The ALJ uses a 5-step evaluation for both DIB and SSI claims to determine whether the Plaintiff meets this definition of "disabled."

   i.   If the Plaintiff is engaged in substantial gainful activity, the Court will find that the Plaintiff is not disabled.

   ii.  If the Plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909 or a combination of such impairments, the Court will find that the Plaintiff is not disabled.

   iii. If the Plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the Plaintiff is disabled.

   iv.  The court considers the Plaintiff's RFC and past relevant work. If the Plaintiff can still perform his past relevant work, the Court will find that he is not disabled.

   v.   The Court considers the Plaintiff's RFC, age, education, and experience to determine if the Plaintiff can perform work *other than* past relevant work. If the Plaintiff can make an adjustment, the Court will find that he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

The Plaintiff has the burden of proof for steps 1 to 4. *Carrelli*, 390 F. App'x at 435. The burden shifts to the ALJ at step 5, where the ALJ must "identify a significant number of jobs in the economy that accommodate the [Plaintiff's] RFC and vocational profile." *Carrelli*, 390 F. App'x at 435 (citation omitted). To meet this burden, the ALJ may use the medical-vocational guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, known as "the grid." 20 C.F.R. §§ 404.1569 and 416.969; *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). The ALJ may use the grid as a guide or rely on it in reaching a conclusion, depending upon the Plaintiff.

If a Plaintiff has nonexertional limitations that "restrict[] . . . [his] performance of a full range of work at the appropriate [RFC]," then these limitations must be considered and the grid may be used as a guide. *Wright*, 321 F.3d at 616 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)). In those cases, "the ALJ [is] entitled to rely on the testimony of a [VE] in reaching his decision" as to whether the Plaintiff is disabled or whether he is not disabled and a significant number of jobs exist that the Plaintiff can perform. *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (citation omitted) (unpublished opinion).

If the Plaintiff does not have nonexertional limitations, and "the findings of fact made with respect to a[n] . . . individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule [in the grid], the rule directs a conclusion as to whether the individual is or is not disabled." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (unpublished opinion) (quoting Appendix 2 at § 200.00(a)).

### C.     Notice of Decision

On October 26, 2012, the ALJ made the findings of fact and conclusions of law below.

1.  The claimant meets the insured status requirements of [the Act] through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since December 31, 2009, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: residuals of degenerative disc disease and surgical repair, leg fracture and left arm injury (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. [T]he claimant has the [RFC] to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).

6. The claimant is capable of performing past relevant work as an assembler of small parts. The [VE] also reported that other work would be available for that [RFC]. This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in [the Act], from December 31, 2009, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Docket Entry 8, pp. 23-25; 28). The ALJ also made the specific decision:

1. Based on the application for a period of disability and [DIB] protectively filed on August 30, 2010, the claimant is not disabled under sections 216(i) and 223(d) of [the Act].

2. Based on the application for SSI protectively filed on August 30, 2010, the claimant is not disabled under section 1614(a)(3)(A) of [the Act].

(Docket Entry 8, p. 9).

### IV.     Claims of Error

### A.     The ALJ Erred in Finding that the Plaintiff did not Meet or Equal the Listing for Borderline Intellectual Functioning at 12.05(C).

As the U.S. Supreme Court explained, "[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " *Sullivan v. Zebley*, 493 U.S. 521, 532

(1990) (citing 20 C.F.R. §§ 404.1525(a) and 416.925(a); Social Security Ruling (SSR) 83-19, at 90). If an ALJ finds that an impairment "matches or is equivalent to a listed impairment," the ALJ presumes disability. *See Sullivan*, 493 U.S. at 532. The listing at issue here is 12.05(C).

As a threshold matter, listing 12.05 broadly defines the impairment of "intellectual disability." This is synonymous with "mental retardation" or "intellectual impairment." *See Sheeks v. Comm'r of Soc. Sec. Admin.,* 544 F. App'x 639, 641 (6th Cir. 2013) (unpublished opinion). This listing does not, however, refer to "borderline intellectual functioning," as Plaintiff asserts. Instead, "borderline intellectual functioning" is a finding that an ALJ may make and is considered a "lesser diagnosis" than the listing of "intellectual disability." *See Sheeks,* 544 F. App'x at 641.

In order for an ALJ to find that an impairment meets the listing of 12.05(C), there are "four requirements: (1) significantly subaverage general intellectual functioning, (2) deficits in adaptive functioning, (3) evidence that the condition began before age twenty-two and (4) a valid IQ score of seventy or below along with a physical or other mental impairment imposing an additional and significant work-related limitation." *See Sheeks,* 544 F. App'x at 641 (citation and internal quotation omitted). Each of these criteria must be met for the presumption of disability to apply. *See West v. Com'r Soc. Sec. Admin.,* 240 F. App'x 692, 698 (6th Cir. 2007) (unpublished opinion)(affirming the ALJ's decision because the plaintiff failed to produce evidence of deficiencies in adaptive functioning despite finding that the ALJ erred in the analysis of IQ score.).

Plaintiff first argues that the ALJ failed to consider Plaintiff's "sub-average performance" and evidence of Plaintiff's deficits in adaptive functioning, particularly his academic record. (Docket Entry 11, p. 13). Plaintiff also argues that the ALJ erroneously relied on Plaintiff's

work history from the period after Plaintiff dropped out of school and erroneously rejected Plaintiff's IQ scores. (Docket Entry 11, p. 13). Finally, Plaintiff argues that "if the ALJ felt that the unrefuted test results in the record were not sufficient, then additional testing should have been conducted." (Docket Entry 11, p. 14).

However, the record provides substantial evidence to support the ALJ's finding that Plaintiff did not satisfy listing 12.05(C). The record shows that Plaintiff failed to satisfy the listing criteria of subaverage intellectual function, onset of the condition before age twenty-two, deficits in adaptive functioning, and a valid IQ score. Even "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify" as meeting or equaling a listing. *Sullivan*, 493 U.S. at 530.

Here, as the ALJ explained, Plaintiff "alleges an IQ of 60 from third grade testing, but the remote scoring was not based on a [valid] Wechsler test . . . ." (Docket Entry 8, pp. 24-25). Plaintiff also argues that his academic record demonstrates "sub average performance." (Docket Entry 11, p. 13). However, the Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 677 (6th Cir. 2009) (citation omitted) (unpublished opinion).

Plaintiff did testify that he had been in "special resources" classes since the fourth grade and that he left school in the eighth grade. (Docket Entry 8, p. 42). However, as the ALJ explained, even if "[Plaintiff] was diagnosed with hearing loss and low IQ in the remote past . . . [he] has suffered no deficits in adaptive functioning, as he has engaged in substantial gainful activity for many years after these conditions were first diagnosed." (Docket Entry 8, p. 24). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills,

communication, and daily living skills." *W*, 240 F. App'x at 698. As the ALJ explained, the record does not show deficits in adaptive functioning. Instead, Plaintiff admitted "that he prepares his own meals, does laundry and sweeps. He goes out twice a day, can go out alone and shops for food and clothes . . . [and] could pay attention all day." (Docket Entry 8, p. 28). Without deficits in adaptive functioning, Plaintiff cannot satisfy listing 12.05(C) and the presumption of disability does not apply.

Finally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing, is necessary." *Hayes,* 357 F. App'x at 675 (citing 20 C.F.R. §§ 404.1517 and 416.917). In *Hayes v. Comm'r of Soc. Sec.,* the Court held that the ALJ did not abuse this discretion by denying a plaintiff's request for consultative intelligence testing where the plaintiff, "even with further testing," could not negate the totality of his "daily living skills" that showed an absence of adaptive functioning limitations. Likewise, here, additional testing would have been futile given Plaintiff's lack of adaptive functioning limitations.

Therefore, the record provides substantial evidence to support the ALJ's finding that Plaintiff did not satisfy the criteria of 12.05(C). The records also provides substantial evidence to support the ALJ's exercise of discretion in not ordering additional testing.

**B.      The ALJ Rejected the Opinions of Two Treating Physicians in Favor of a Non-Examining, Consulting Medical Opinion.**

Plaintiff argues that the ALJ rejected the opinions of Dr. Cutright and Dr. MacDonald in favor of Dr. Cohn.  (Docket Entry 11, pp. 14-16). He argues that both Dr. Cutright and Dr. MacDonald were treating physicians and that the ALJ "failed to assess most of the factors necessary to reject Dr. Cutright's opinion." (Docket Entry 11, p. 15). He also argues that the ALJ failed to consider the opinion of the nurse, Ms. Linville. (Docket Entry 8, p. 16). Finally,

Plaintiff argues that the ALJ gave controlling weight to Dr. Cohn, and that the ALJ erred in doing so. (Docket Entry 11, pp. 16-17). Specifically, he argues that "Dr. Cohn's opinion is based upon an incomplete medical history . . . ." (Docket Entry 11, p. 17).

A "treating source" is a plaintiff's "physician, psychologist, or other acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship[5] with [the plaintiff]." 20 C.F.R. §§ 404.1502 and 416.902. Pursuant to the "treating physician rule," "[i]f [an ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the plaintiff's] impairment(s) is well-supported . . . and is not inconsistent with the other substantial evidence . . . , [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (emphasis added); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must provide good reasons for the weight he or she does assign. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The ALJ must consider the following factors in deciding what discounted weight to give to the treating source's opinion:  whether there was an examining relationship; the length of the treatment relationship and frequency of examination; the nature and extent of the relationship; supportable medical evidence; evidence that is consistent with the record; and the source's specialization. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 404.1527(c)(3)-(6), 416.927(c)(2)(i)-(ii) and 404.1527(c)(3)-(6). The ALJ will also consider these factors when determining what weight to give to the opinion of a nontreating or nonexamining source even though such opinions "are never assessed for 'controlling weight.' "

---

[5] 20 C.F.R. §§ 404.1502 and 416.902 (An "ongoing treatment relationship" is a relationship for which "the medical evidence establishes that [the plaintiff] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s). [An ALJ] may consider an acceptable medical source who has treated or evaluated [a plaintiff] only a few times or only after long intervals . . . to be [the] treating source if the nature and frequency of the treatment or evaluation is typical for [the] condition(s).").

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (citing 20 C.F.R. §§ 404.1527(c) and 416.927(c)).

Here, the threshold question is which of the providers were treating sources. The record shows that Dr. Cutright alone was a treating physician. He treated Plaintiff for a leg fracture in April 2011 and provided follow up through October 2011. (Docket Entry 8, pp. 327; 334; 419-34). However, there is no evidence of any such relationship with Dr. MacDonald. Instead, the record shows that Plaintiff presented to Robertson County Health Department between August 2010 and April 2012, where he saw various providers, including Ms. Linville. (Docket Entry 8, pp. 297-300; 507-09; 511; 513; 519). However, Dr. MacDonald's signature appears in the record just once, after Ms. Linville's signature on a Medical Source Statement. (Docket Entry 8, p. 537). Therefore, the record does not show that Plaintiff saw Dr. MacDonald "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. §§ 404.1502 and 416.902. In other words, the record does not show that Plaintiff had an ongoing treatment relationship with Dr. MacDonald and therefore does not show that Dr. MacDonald was a treating physician.

Plaintiff's argument that the ALJ erred in rejecting the treating physician opinions is without merit. First, this argument only applies to Dr. Cutright because the record shows that he is the sole treating physician. Next, the record shows that Dr. Cutright's Medical Source Statement was not well supported or consistent with other evidence so as to qualify for controlling weight. Instead, as the ALJ explained, the Medical Source Statement limited Plaintiff to sedentary and light work, despite the fact that "after the treatment for back injuries and the pinched nerve . . . , [Plaintiff] continued to do heavy work." (Docket Entry 8, p. 27). Therefore, the ALJ gave the opinion light weight. (Docket Entry 8, p. 27).

Plaintiff also argues that "[a]ssuming . . . [that he] performed heavy work after his alleged onset date, this directly contradicts the ALJ's finding that Plaintiff had not performed [substantial gainful activity] since December 31, 2009." (Docket Entry 11, p. 15). To be clear, Plaintiff reported an onset date of December 31, 2009, reported performing work in a tobacco field in July 2010, and reported being back at work "full duty" in October 2011, although he was experiencing knee problems at that time. (Docket Entry 8, pp. 270; 421). Plaintiff's argument about the ALJ's reasoning being contradictory is misplaced. The ALJ clarified that although Plaintiff had worked after the alleged onset date, such work did not rise to the level of substantial gainful activity. (Docket Entry 8, p. 23). The fact that Plaintiff returned to heavy tobacco work precluded the ALJ from giving controlling weight to Dr. Cutright's suggested limitations. However, the fact that Plaintiff returned to heavy work did not mean that the ALJ found that work to constitute substantial gainful activity. These findings are not inconsistent or contradictory.

Moreover, the record shows that the ALJ considered the required factors when assigning little weight to Dr. Cutright's opinion. The record shows that the ALJ acknowledged that Dr. Cutright was a "treating physician," considered the length of Plaintiff's medical history with Dr. Cutright, and considered the frequency of Plaintiff's medical visits. (Docket Entry 8, pp. 26-27). The ALJ considered the consistency of the medical evidence with the record and also noted Dr. Cutright's specialization in orthopaedics. (Docket Entry 8, p. 27).

The record also shows that the ALJ did not reject, or fail to consider, the opinion of Ms. Linville. Instead, the ALJ considered the required factors when determining what weight to assign to her opinion. The ALJ noted Plaintiff's treatment relationship and medical history with Ms. Linville between 2010 and 2012. (Docket Entry 8, p. 27). The ALJ considered the

consistency of the medical evidence with Ms. Linville's observations and the limitations she suggested for Plaintiff. (Docket Entry 8, p. 27).

Finally, Plaintiff's argument concerning the ALJ's agreement with Dr. Cohn's opinion is without merit. Plaintiff argues that under the SSR 96-6P:

> For example, the opinion of a State agency . . . consultant . . . may be entitled to greater weight than a treating source's medical opinion if the State agency . . . consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment . . . .

SSR 96-6P (S.S.A.), 1996 WL 374180. Plaintiff argues that the ALJ erred in agreeing with Dr. Cohns's opinion because Dr. Cohn is a nonexamining consulting doctor and because he purportedly did not have or use the entire medical record. (Docket Entry 11, pp. 17-18). However, the record shows that the ALJ properly evaluated the opinion of Dr. Cohn and considered the required factors when determining what weight to assign to his opinion. He noted that Dr. Cohn was a state agency physician. (Docket Entry 8, p. 27). He also considered the consistency of the medical evidence with the record and agreed with Dr. Cohn's reasoning for not finding Plaintiff to be fully credible. (Docket Entry 8, p. 27). As the ALJ explained, "the alleged onset date . . . is not supported by the office visit records nor by . . . [Plaintiff's] continuation of working [after the alleged onset date]." (Docket Entry 8, p. 28).

Moreover, the Sixth Circuit has clarified that the example in SSR 96-6P "does not exhaust the range of 'appropriate circumstances' under which a non-treating source's opinion may be entitled to greater weight than that of a treating source." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citation omitted) (unpublished opinion). Instead, it is just an example. "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.' " *Helm*, 405 F. App'x at 1002

(citation omitted). As discussed above and as the record shows, Dr. Cohn's reasoning was supported by evidence of continued work after the alleged onset date. Therefore, the record provides substantial evidence that the ALJ did not err in his consideration of these opinions.

## C.      The ALJ Erred in Formulating the Plaintiff's RFC.

The Plaintiff argues that the ALJ erred in her RFC analysis because the ALJ engaged in "selective analysis" of the record. (Docket Entry 11, p. 17). Plaintiff argues that although the ALJ concluded that Plaintiff has the RFC to perform the full range of medium work, the ALJ failed to consider all of Plaintiff's impairments and "excluded those portions [of the record] suggesting that his limitations are severe." (Docket Entry 11, pp. 17-18). The Magistrate Judge finds that this argument is largely redundant and without merit.

An ALJ must determine the RFC based on all relevant evidence in the record, including a plaintiff's: (1) medical history; (2) medical reports; (3) consultative examination reports; (4) Medical Source Statements; (5) descriptions of symptom-based limitations; (6) plaintiff statements; and (7) family or third party statements. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3). The ALJ also considers all of the plaintiff's medically determinable impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2).

Here, the record shows that the ALJ considered those factors. The ALJ found that Plaintiff has the severe impairments of "residuals of degenerative disc disease and surgical repair, leg fracture and left arm injury" and considered Plaintiff's alleged impairments of "hypertension, loss of hearing, low IQ which results in reading problems, visual impairment, . . . depression . . . limited education, [and] dizziness." (Docket Entry 8, pp. 23-24). The record shows that the ALJ cited the plaintiff's medical history and medical reports from as far back as 2006. (Docket Entry 8, p. 25). The ALJ explained at length, as addressed above, the reasoning

behind the weight that he assigned to both Medical Source Statements. (Docket Entry 8, p. 27). The ALJ cited Plaintiff's testimony and descriptions of symptoms. The ALJ noted that Plaintiff testified about his broken arm in the third grade and that Plaintiff "gets sharp pain in it now." (Docket Entry 8, p. 27). She noted his testimony about "diminished grip" and his inability to use his left hand. (Docket Entry 8, p. 27). No family members or third parties testified at the hearing.

The Plaintiff also argues that the ALJ erred in her RFC analysis by finding that Plaintiff could still work as an assembler. (Docket Entry 11, pp. 18-19). Plaintiff lists the third hypothetical from the VE testimony, in which the ALJ asked the VE to consider a person who can "lift, push, pull, and carry ten pounds occasionally, up to twenty pounds, sit, stand, and/or walk six hours in an eight-hour workday." (Docket Entry 8, p. 63). Plaintiff argues that "[t]he ALJ's hypothetical was not representative of either treating source's opinion . . . and constitutes error." (Docket Entry 11, p. 19). Instead, Plaintiff argues that Dr. Cutright limited Plaintiff to a total of one hour of standing in an eight hour workday while Dr. MacDonald limited Plaintiff to standing for thirty minutes total. (Docket Entry 11, p. 19).

First, to the extent that Plaintiff reiterates his argument that both Dr. Cutright and Dr. MacDonald are treating sources, this argument has been addressed above and is without merit because Dr. Cutright is the sole treating physician. Next, although the ALJ uses medical sources "to provide evidence, including opinions, on the nature and severity of . . . [a plaintiff's] impairment(s)," the "final responsibility" for determining the RFC is in the hands of the ALJ. 20 C.F.R. §§ 404.1527 and 416.927. Here, Plaintiff is correct that Dr. Cutright limited Plaintiff to a total of one hour of standing in an eight hour workday while Ms. Linville, not Dr. MacDonald, limited Plaintiff to standing for thirty minutes. (Docket Entry 8, p. 499; 533). However, as explained above, the ALJ gave those opinions less than controlling weight and explained why

she did so. Therefore, the record provides substantial evidence that the ALJ did not err in determining Plaintiff's RFC.

**D.      The ALJ Erred in Finding that the Plaintiff Could Perform Past Relevant Work.**

Plaintiff argues that the ALJ erred by finding the Plaintiff "was capable of performing past relevant work as an assembler of small parts" because Plaintiff performed that work too remotely. (Docket Entry 11, pp. 19-20). Plaintiff also argues that the ALJ erred by "fail[ing] to consider the work as . . . Plaintiff actually performed it." (Docket Entry 11, p. 20).

Pursuant to 20 C.F.R. §§ 404.1565 and 416.965, an ALJ will usually consider a plaintiff's past relevant work from the past 15 years. "A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. §§ 404.1565 and 416.965. However, "the 15–year time-line is simply a guide to ensure that past work is considered when it accurately predicts abilities today." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 418 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1565(a) and 416.965(a) (unpublished opinion). Moreover, "the 15–year guide does not apply where the question concerns unskilled work." *Reynolds,* 424 F. App'x at 418 (quoting *Smith v. Sec'y of Health & Human Servs.,* 893 F.2d 106, 109 (6th Cir.1989)). With unskilled work, "the skills needed to perform that job . . . [do] not change[] . . . [and] would still be useful upon return." *Reynolds,* 424 F. App'x at 418 (citation omitted). In *Reynolds v. Comm'r of Soc. Sec.,* the unskilled work was that of a donut froster. *Reynolds,* 424 F. App'x at 418.

Here, the VE testified that Plaintiff's past work as an assembler was unskilled. (Docket Entry 8, p. 61). Therefore, the 15 year guide does not apply here and the record provides substantial evidence that the ALJ did not err in concluding that Plaintiff could perform his past work as an assembler.

Also, Plaintiff's argument that the ALJ failed to consider the past relevant work as Plaintiff performed it is mistaken. Instead, the determination of a plaintiff's ability to perform past relevant work involves an inquiry into the work "either as the . . . [plaintiff] actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2). Therefore, even if the specific requirements of Plaintiff's past work would preclude him from performing the work today, the ALJ did not err in considering the past relevant work as it is performed in the national economy.

## V.        Conclusion

There is substantial evidence within the record to support the ALJ's findings of fact and the ALJ applied the correct legal standard.

## VI.        Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion (Docket Entry 14) be **DENIED**, and that the Commissioner's decision be **AFFIRMED**.

Under Rule 72(b), FED. R. CIV. P., the parties have fourteen (14) days, after being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S. 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this ___ day of March, 2015.

s/Joe B. Brown_____
Joe B. Brown
U.S. Magistrate Judge